12-4214-cv
Harwe v. Floyd

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of October, two thousand thirteen.

PRESENT:  REENA RAGGI,
          CHRISTOPHER F. DRONEY,
               *Circuit Judges*,
          JOHN F. KEENAN,
               *District Judge*.[*]

-----------------------------------------------------------------------

BRITTMARIE HARWE, JANET LEVY,
          *Plaintiffs-Appellants*,

          v.                                        No. 12-4214-cv

RONALD FLOYD,
          *Defendant-Appellee*.

-----------------------------------------------------------------------

FOR APPELLANTS:                    NORMAN A. PATTIS, The Pattis Law Firm, LLC, Bethany, Connecticut.

---

[*] The Honorable John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLEE:        JAMES N. TALLBERG, Karsten & Tallberg, LLC, West Hartford, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Mark R. Kravitz, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 4, 2012, is AFFIRMED.

Plaintiffs Brittmarie Harwe and Janet Levy appeal from a judgment in favor of defendant police officer Ronald Floyd, which reflects both an award of summary judgment in favor of Floyd on plaintiffs' Fourth Amendment claim of unreasonable seizure and a jury verdict in favor of Floyd on plaintiffs' claim of excessive force. See 42 U.S.C. § 1983. Plaintiffs here challenge only the summary judgment award, claiming that they raised triable issues of fact as to the basis for, scope of, and duration of their traffic stop detention, which precluded the district court from finding as a matter of law that Floyd was entitled to qualified immunity from liability for damages. We review an award of summary judgment de novo, resolving all ambiguities and drawing all inferences in favor of the nonmovant, and we will affirm only if the record reveals no genuine dispute of material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Nagle v. Marron, 663 F.3d 100, 104–05 (2d Cir. 2011). We assume the parties' familiarity with the underlying facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

2

Qualified immunity shields police officers from § 1983 liability for damages as long as their conduct does not violate clearly established constitutional rights of which a reasonable person should have been aware. See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Zalaski v. City of Hartford, 723 F.3d 382, 388 (2d Cir. 2013). Thus, in considering a qualified immunity claim, a court first considers whether the facts demonstrate a constitutional violation. If the answer to that question is clearly no, further inquiry is unnecessary because where there is no viable constitutional claim, a defendant has no need of immunity. See Zalaski v. City of Hartford, 723 F.3d at 388–89. If, however, the answer to the question is yes, or not definitely no, a court must then consider whether the right was clearly established at the time of defendant's conduct. See id. Here, the district court determined that both questions had to be answered in favor of defendant. We agree.

1.    Fourth Amendment Violation

Plaintiffs submit that there are disputed issues of fact as to whether Floyd's decision to stop them was supported by reasonable suspicion of a traffic violation. See United States v. Stewart, 551 F.3d 187, 191 (2d Cir. 2009) ("[A] traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment."). Because plaintiffs did not so contend in the district court, see Harwe v. Floyd, No. 3:09-cv-1027 (MRK), 2011 WL 674024, *9 (D. Conn. Feb. 17, 2011) ("The parties do not dispute that Officer Floyd's initial decision to stop Ms. Levy and Ms. Harwe was reasonable."); Harwe Mem. In Opp. to

3

Motion to Dismiss at 3, Supplemental App. at 3 ("Neither plaintiff here contends that there was no justification for the stop of the vehicle driven by Ms. Levy."), the argument is forfeited on appeal and we do not address it further, see Oneida Indian Nation v. Madison County, 665 F.3d 408, 441 (2d Cir. 2011).

Plaintiffs did challenge the scope and duration of the stop in the district court. See Gilles v. Repicky, 511 F.3d 239, 245 (2d Cir. 2007) (recognizing temporary detention of person during traffic stop as Fourth Amendment seizure, which "must be temporary and last no longer than is necessary to effectuate the purpose of the stop" to be reasonable (internal quotation marks omitted)). Upon an independent review of the record, however, we conclude, as the district court did, that plaintiffs failed to adduce evidence sufficient to raise material disputes of fact on these points.

First, although plaintiffs testified at their depositions that the stop lasted an hour, we agree with the district court that no reasonable jury could credit that account in light of other evidence—from plaintiffs themselves and their cell phone records, as well as from police department records—conclusively showing that the stop lasted no more than half an hour. Accordingly, we assess the reasonableness of the stop assuming a half-hour duration. See Scott v. Harris, 550 U.S. 372, 380 (2007) (recognizing that when opposing parties provide different accounts of events at issue, one of which is flatly contradicted by record so that no reasonable jury could credit it, "court should not adopt that version . . . for purposes of ruling on a motion for summary judgment").

4

Second, once Floyd stopped plaintiffs' car for a suspected traffic violation, the officer was entitled to inquire into matters that could have informed the violation. Thus, Floyd's observations of Levy swerving her car without signaling, together with her admission to alcohol consumption at dinner, made it reasonable for him to continue the stop beyond the time necessary to issue a traffic citation in order to assuage reasonable suspicions as to driver sobriety. See United States v. Jenkins, 452 F.3d 207, 214 (2d Cir. 2006); see also United States v. Simmons, 560 F.3d 98, 103 (2d Cir. 2008) (recognizing existence of reasonable suspicion where officer has "particularized and objective basis for suspicion of legal wrongdoing under the totality of the circumstances" (internal quotation marks omitted)). Levy's failure of two field sobriety tests would reasonably exacerbate, rather than assuage, Floyd's suspicions, despite her innocent explanations. In these circumstances, Floyd's decision to investigate further by briefly questioning Levy and Harwe separately—a technique that in fact dispelled his suspicions—cannot be deemed more intrusive than necessary. See United States v. Glover, 957 F.2d 1004, 1011 (2d Cir. 1992) (stating that courts "should not indulge in unrealistic second-guessing as to the means law enforcement officers employ to conduct their investigations" (alteration and internal quotation marks omitted)). Nor can such actions be found to have unnecessarily prolonged the stop. See, e.g., United States v. Tehrani, 49 F.3d 54, 61 (2d Cir. 1995) (upholding 30-minute detention based on reasonable suspicion); see also United States v. Branch, 537 F.3d 328, 338–39 (4th Cir. 2008) (same).

5

No different conclusion is warranted because Levy submits that Floyd should instead have investigated her "proof" that she was a stroke victim, which explained her inability to satisfy the physical requirements of the sobriety tests. "The question . . . 'is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.'" United States v. Tehrani, 49 F.3d at 61 (quoting United States v. Sharpe, 470 U.S. 675, 687 (1985)). No reasonable jury could so conclude where the interview means Floyd employed yielded a result favorable to plaintiffs in the course of a stop lasting a total of half an hour.

Nor could a jury find the stop to have been unreasonably lengthy based on plaintiffs' testimony that Floyd conferred with other officers who purportedly laughed and pointed at Levy. As an initial matter, plaintiffs do not contend that the observed discussion was unrelated to the investigation. To the contrary, they assert that Floyd "engage[d] in leisurely skull sessions with fellow officers about whether to arrest or to issue a citation." Appellants Br. 13. A brief discussion on the proper course of action to take with respect to an investigation cannot be deemed to have unreasonably prolonged a stop. See United States v. Glover, 957 F.2d at 1011. Even assuming that the discussion was unrelated to the investigation and that the officers' conduct was unprofessional, the record precludes a finding that it was anything other than a very brief part of a half-hour stop during which Floyd (1) approached plaintiffs' car, (2) conducted preliminary questioning of plaintiffs, (3) administered four field sobriety tests to Levy, (4) placed Levy in the police car,

6

(5) separately questioned Levy and Harwe, (6) filled out a citation, and (7) issued that citation to Levy. On this record, no factfinder could reasonably conclude that Floyd's conversation with his fellow officers so unreasonably extended the stop's duration as to violate plaintiffs' constitutional rights. See United States v. Harrison, 606 F.3d 42, 45 (2d Cir. 2010) (observing that stops extended up to 17 minutes by inquiries into unrelated matters have been found reasonable).

Accordingly, because Floyd's detention of plaintiffs could not be found unreasonable under the Fourth Amendment, the district court properly granted summary judgment to Floyd at the first step of qualified immunity analysis.

2.      Clearly Established Right

Even if there were a material question as to the reasonableness of the scope and duration of plaintiffs' stop, we would conclude, as the district court did, that Floyd was entitled to qualified immunity on the second step of analysis because at least some officers of reasonable competence in Floyd's position could have believed that the half-hour stop in this case "was within the bounds of appropriate police responses." Saucier v. Katz, 533 U.S. 194, 208 (2001) (holding qualified immunity warranted in such circumstances); see Zalaski v. City of Hartford, 723 F.3d at 388–89.

Thus, we conclude that the district court correctly awarded summary judgment to Floyd on plaintiffs' Fourth Amendment seizure claim.

7

We have considered plaintiffs' remaining arguments on appeal and conclude that they

are without merit.  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court